Filed 5/9/22  P. v. Phothirath CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092316 |
| Plaintiff and Respondent, | (Super. Ct. No. 01F06798) |
| v. | |
| CHRISTOPHER PHOTHIRATH, | OPINION ON TRANSFER |
| Defendant and Appellant. | |

Defendant Christopher Phothirath appeals the trial court's denial of his petition for resentencing under Penal Code section 1170.95, enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.).[1]  He contends his conviction for attempted murder as an aider and abettor on a natural and probable consequences theory was eligible for relief under section 1170.95, and the trial court erred in denying his petition as he made a prima facie showing of eligibility.  He also contends, and the People properly concede, that the

---

[1] Undesignated statutory references are to the Penal Code.

1

sentence imposed is unauthorized under *People v. Gonzalez* (2009) 178 Cal.App.4th 1325 (*Gonzalez*).  In an unpublished opinion, we agreed the sentence was unauthorized and remanded for resentencing; we affirmed the order denying defendant's section 1170.95 petition, consistent with then prevailing case law that defendants convicted of attempted murder were not eligible for resentencing under section 1170.95.  (*People v. Phothirath* (Oct. 20, 2021, C092316) [nonpub. opn.].)  The Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the issue in light of Senate Bill No. 775 (2021-2022 Reg. Sess.).

Defendant submitted supplemental briefing arguing that the law now explicitly applies to attempted murder convictions and the trial court improperly engaged in judicial factfinding at the prima facie stage in concluding defendant could not have been convicted under a natural and probable consequences theory; thus, the case must be remanded because he stated a prima facie case for eligibility.  The People submitted supplemental briefing arguing the trial court correctly determined defendant was ineligible for resentencing, as the jury did not rely on a natural and probable consequences theory in finding him guilty of attempted murder.  We agree with defendant and will remand the case for further proceedings.

## BACKGROUND

We take the facts from our opinion in the prior appeal, *People v. Xabandith et al.* (July 5, 2005, C045950) [nonpub. opn.].[2]  "This is not a case of conflicting eyewitness accounts.  It is remarkable only for what no one saw.  No one testified there was any provocation for the beating or for the shooting.  No one testified the victim threw gang signs, 'mad dogged' the patrons at the bar, showed any disrespect to the ECC [El Camino

---

[2]  We incorporated the record in case No. C045950 by reference.

Crips], or challenged defendants to a fight. No one testified they saw who shot Chanthala Banemanyvong. No one heard anyone yell out 'ECC' or claim gang affiliation.

"The witnesses did agree, however, on a general chronology of events leading up to the shooting. Banemanyvong arrived at a bar on El Camino Avenue in Sacramento at approximately 11:00 p.m. on August 11, 2001. Three friends, all of whom had been drinking beer before they arrived at the bar, accompanied him. Banemanyvong sat down at a table with a friend, Bounloth Chandara, who was also known as Loddi. Aware that a group of Laotian men were giving him 'mean look[s]' and 'mad-dogging' him, Banemanyvong decided to go outside to smoke a cigarette.

"Defendants followed him out of the bar. Holding what appeared to be either a beer bottle or beer can, defendant Phothirath asked Banemanyvong where he was from or what gang he was from. Banemanyvong responded that he was from Chico. Phothirath then asked, 'You know where you at?' and Banemanyvong said he was on El Camino. Phothirath threatened, 'I'm going to shoot you.' Loddi, who knew both defendants, tried unsuccessfully to intervene and abort a confrontation. Phothirath hit Banemanyvong, splitting open his chin. Loddi heard a bottle crack.

"Defendants both jumped Banemanyvong and began beating him. He ran around a car in the parking lot, ducking and trying to get away, bleeding badly from his chin. One of his friends tried to intervene but was stopped by one of the bystanders. During a momentary break in the action, Loddi went inside the bar to use the bathroom and Banemanyvong tried to collect himself by the front door of the bar.

"When Banemanyvong and his friend heard shots behind them, they ran across the street to an open field. Bleeding profusely, Banemanyvong realized he had been shot. He suffered two gunshot wounds, one in his abdomen and one in his back, had a total of three surgeries, and had to wear a colostomy bag. He had a blood alcohol level of .196 percent." (*People v. Xabandith et al., supra*, C045950 [pp. 2-3].)

3

In closing argument, after describing the law of aiding and abetting, the prosecutor informed the jury that "there is another concept that falls within that category of aiding and abetting, it's called natural and probable consequences." As to the attempted murder charge, throughout closing argument, the prosecutor primarily argued defendant was guilty of the attempted murder by virtue of the natural and probable consequences doctrine; specifically, that the attempted murder flowed as a natural and probable result of the target assault,[3] and that both defendants intended a homicide when they confronted Banemanyvong outside the bar. The prosecutor asserted the fight was a "gang beat-down" and the question for the jury to resolve was whether that "gang beat-down" naturally and probably resulted in an attempted murder. He argued defendant had committed the target assault by means of force likely to inflict great bodily injury and with a deadly weapon by hitting Banemanyvong with a bottle *and* codefendant Xabandith had committed the target assault by continuing to punch and kick Banemanyvong. The prosecutor argued *both* defendants had committed the target assault, and the concepts of the natural and probable consequences doctrine and aiding and abetting made them both liable for the entire assault and the attempted murder explaining: "Does a co-principal in this target offense commit the offense of attempted murder? . . . That is all there is to natural and probable consequences"; and, "When we talk about a [section] 245[, subdivision] (a)(1) [offense] and we talk about our target offense, the way that we get to liability on the shooting, which is . . . attempted murder, is through that concept of natural and probable consequences." He stated neither defendant could avoid liability for the attempted murder as not being a natural and probable consequence of the target assault, because they were both armed and fired shots. He informed the jury it did not matter

---

[3] For ease of reference throughout this opinion we will refer to the charge in count 1, assault with a deadly weapon or by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), as the "target offense" or "target assault."

4

who had the intent to kill, or who had actually fired the shots, because the natural and probable consequences doctrine made both defendants guilty of the entire assault and attempted murder. He also informed the jury it did not have to agree who had the specific intent to kill, rather some of the jurors could find defendant guilty of attempted murder under the natural and probable consequences theory and other jurors could find he had his own specific intent to kill. The prosecutor also emphasized to the jury that the easiest means of finding defendant guilty of attempted murder was through the natural and probable consequences theory.

As to both defendants, the court instructed the jury with CALJIC No. 3.00,[4] defining principals, CALJIC No. 3.01,[5] defining direct aiding and abetting, and CALJIC No. 3.02,[6] defining the natural and probable consequences doctrine. The court also

---

[4] CALJIC No. 3.00 as given provides: "Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation, is equally guilty. Principals include: [¶] 1. Those who directly and actively commit or attempt to commit an act constituting a crime; or [¶] 2. Those who aid and abet the commission or attempted commission of the crime."

[5] CALJIC No. 3.01 as given provides: "A person aids and abets the commission or attempted commission of a crime when he or she, one, with the knowledge of the unlawful purpose of the perpetrator; and, two, with the intent or purpose of committing or encouraging or facilitating the commission of the crime; and, three, by act or advice aids, promotes, encourages, or instigates the commission of the crime. [¶] A person who aids and abets the commission or attempted commission of a crime need not be present at the scene of a crime. [¶] Mere presence at the scene of the crime which does not itself assist the commission of the crime does not amount to aiding or abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

[6] CALJIC No. 3.02 as given provides: "One who aids and abets another in the commission of a crime or crimes is . . . not only guilty of those crimes but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order to find this defendant guilty of the crime of attempted murder and\or 245A(2), assault with a firearm, as charged in

provided additional instruction on the elements of aider and abettor liability on the natural and probable consequences theory "to clarify how the two instructions—three of them, actually, blend together."**7**

A jury found defendant guilty of committing three crimes against Banemanyvong: assault with a deadly weapon or by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)—count one) with a true finding defendant personally inflicted great

_____

Count Two and Three, you must be satisfied beyond a reasonable doubt that, one, the crime or crimes of 245A(1) that are alleged in Count One, the assault with a bottle or assault with force likely to produce great bodily injury, was or were committed; two, that the defendant aided and abetted that or those crimes; three, that a co-principal in that crime committed the crimes of attempted murder and\or assault with a firearm, 245A(2); and, four, that the crime of attempted murder and assault with a firearm were a natural and probable consequence of the commission of the crimes of assault with a weapon, such as the bottle, or by means of force likely to produce great bodily injury. [¶] In determining whether a consequence is natural and probable, you must apply an objective test based not on what the defendant actually intended but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A natural consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. Probable means likely to happen. [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of attempted murder and\or 245A(2), assault with a firearm, was a natural and probable consequence of the commission of that [target] crime."

**7** As given, that instruction stated: "The Court set out the elements of aider and abettor liability on the natural and probable consequences theory. [¶] The trier of fact must find that the defendant, acting with, one, knowledge of the unlawful purpose of the perpetrator, and, two, with the intent or purpose of committing, encouraging, or facilitating the commission of a target offense, in this case the 245A(1), assault with a bottle or GBI, force likely to produce GBI; three, by act or advice, aided, promoted, encouraged, or instigated the commission of that target crime, but the trier of fact must also find that the defendant, number four; the defendant's confederate committed an offense other than the target crime; and, five, the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted."

bodily injury (§ 12022.7, subd. (a)), attempted murder (§§ 664, 187, subd. (a)—count two) with a true finding defendant was a principal and a coprincipal personally and intentionally discharged a firearm which caused great bodily injury or death (§ 12022.53, subds. (b), (c), (d) & (e)), and assault with a firearm (§ 245, subd. (a)(2)—count three) with a true finding defendant was armed with a firearm in the commission of the offense (§ 12022, subd. (a)(1)). The jury also found true gang enhancements as to all three counts (§ 186.22, subd. (b)(1)). The trial court sentenced defendant to 25 years to life plus a determinate term of 14 years four months: the upper term of nine years for attempted murder, plus 25 years to life for the firearm enhancement, a consecutive one-year term for assault with a deadly weapon by force likely to cause great bodily injury, plus three years four months for the gang enhancement (one-third the midterm), plus one year for the great bodily injury enhancement; and, imposed and stayed under section 654 a three-year term for assault with a firearm, plus a one-year term on the firearm enhancement, plus three years on the gang enhancement. On appeal, we affirmed defendant's conviction. (*People v. Xabandith et al., supra*, C045950.)

In 2019, defendant filed a section 1170.95 petition for resentencing. The trial court appointed counsel and ordered briefing. The district attorney argued defendant had not made a prima facie showing of eligibility, that Senate Bill No. 1437 did not apply to attempted murder convictions, and that Senate Bill No. 1437 was unconstitutional. Defendant argued that Senate Bill No. 1437 and section 1170.95 applied to attempted murder convictions, Senate Bill No. 1437 was constitutional, and he had made a prima facie showing of eligibility. The trial court noted the instructions given on aiding and abetting and the natural and probable consequences doctrine and concluded, "the jury must have applied CALJIC No. 3.02 only to codefendant Xabandith and not to defendant Phothirath, as the instruction specifically applied only to the [section] 664/187 and 245[, subdivision] (a)(2) offenses, indicated that the [section] 245[, subdivision] (a)(1) offense was the target offense for those offenses, and required that the 'defendant' aided and

7

abetted the [section] 245[, subdivision] (a)(1) offense.  Since the jury necessarily determined that <u>defendant Phothirath</u> had personally committed the [section] 245[, subdivision] (a)(1) assault with the bottle, having found true the attaching [section] 12022.7[, subdivision] (a) <u>personal infliction</u> of great bodily injury enhancement, the jury necessarily determined that the natural and probable consequences doctrine applied <u>only</u> to codefendant Xabandith and <u>not</u> to defendant Phothirath."  (Original underline.) Relying on the recitation of the facts in our appellate opinion, and the jury instructions given in the case, the trial court concluded defendant was not eligible for relief as he was not convicted on a theory of either felony murder or the natural and probable consequences doctrine.

DISCUSSION

I

Defendant contends the trial court erred in concluding he was ineligible for resentencing without finding he had made a prima facie case, issuing an order to show cause, and holding an evidentiary hearing.  Underlying this claim is his argument that as a person convicted as an aider and abettor on a theory of natural and probable consequences, he can seek relief under section 1170.95.  Defendant argues the trial court erred in concluding he could not have been convicted of attempted murder based on the natural and probable consequences doctrine.  The People argue the changes to section 1170.95 do not entitle defendant to relief, as the jury instructions and verdicts indicate the jury did not rely on a natural and probable consequences theory.

Senate Bill No. 1437 was enacted "to amend the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder

8

to address felony-murder liability.  (Stats. 2018, ch. 1015, §§ 2, 3.)  It also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions.  (Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 1437 changed section 188's definition of malice for the crime of murder.  Under new section 188, subdivision (a)(3), "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  It thus eliminated natural and probable consequences liability for murder and limited the scope of the felony-murder rule.  (Stats. 2018, ch. 1015, §§ 2, 3.)

Section 1170.95, former subdivision (a) allowed those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 775, which was signed into law October 5, 2021, amended section 1170.95 to, among other things, clarify that "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories."  (Stats. 2021, ch. 551, § 1, subd. (a).)  Senate Bill No. 775 was passed as nonurgency legislation during the regular session and became effective January 1, 2022.  (Cal. Const., art. IV, § 8, subd. (c)(1); see also *People v. Camba* (1996) 50 Cal.App.4th 857, 862.)  The statute applies to acts predating its enactment as either an

9

ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748 or a clarification of law (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57). In either case, defendant is entitled to the benefit of the new provisions to section 1170.95.

In addition to Senate Bill No. 775, *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) held that once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction, including a prior appellate court opinion, in determining whether that single prima facie showing has been made. (*Lewis*, at pp. 970-972.) Because the prima facie inquiry under subdivision (c) of section 1170.95 is limited at this preliminary juncture, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)

Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*Lewis, supra*, 11 Cal.5th at p. 971), the court need not credit factual assertions that are untrue as a matter of law. (*Drayton, supra*, 47 Cal.App.5th at p. 980.) Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971; *Drayton*, at p. 979.)

The trial court considered the underlying record of conviction, including our prior appellate opinion, and the jury instructions given, to assess defendant's role in the attempted murder and concluded he was not eligible for relief. This conclusion rested on the trial court's analysis that the jury must have concluded defendant was the *only* direct perpetrator of the target assault, assault with a deadly weapon or by force likely to produce great bodily injury; and therefore, defendant could not have been an aider and abettor of the target offense. The court's reasoning continues that if defendant could not

have been an aider and abettor of the target offense, he could not have been convicted under a natural and probable consequences theory.

The flaw in the court's reasoning is that it rests on the presumption that a principal in a target offense may act only as an actual perpetrator *or* an aider and abettor. As defendant notes, our Supreme Court has rejected such a clear dividing line between the actual perpetrator and an aider and abettor. "It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.) Thus, although the codefendant was liable for defendant's actions as an aider and abettor, he was an actor too. (*Ibid.*) In addition, following the court's reasoning to its logical conclusion would mean under the instructions given, defendant as the perpetrator of the target offense could avoid liability for the natural and probable consequences of his crime, attempted murder, if he was not the actual perpetrator of that offense. This is essentially the argument rejected in *People v. Olguin* (1994) 31 Cal.App.4th 1355, where the court made clear the law of liability for natural and probable consequences was that the "perpetrator of an assault and an aider and abettor are *equally* liable for the natural and foreseeable consequences of their crime. Both the perpetrator and the aider and abettor are principals, and *all* principals are liable for the natural and reasonably foreseeable consequences of their crimes." (*Olguin*, at p. 1376.)

That the jury found defendant personally assaulted Banemanyvong with the bottle, does not preclude the possibility that the jury also found codefendant Xabandith directly and actively committed the target offense by beating, punching, and kicking Banemanyvong. Nor does it preclude the possibility that defendant aided and abetted codefendant Xabandith in this continuing target assault. This is particularly true in light of the prosecutor's closing argument which emphasized that both defendants perpetrated

11

the target offense and were each guilty of the attempted murder under the natural and probable consequences doctrine.

We cannot conclude on this record that defendant is necessarily ineligible for relief under section 1170.95. The record does not establish which theory of guilt the jury adopted as to the attempted murder, or whether the jurors were even unanimous in that theory of guilt. Thus, the record does not preclude the possibility that the jury found defendant guilty on a theory that does not comport with the malice requirements under sections 188 and 189. Accordingly, we reverse and remand the matter to the trial court to conduct further proceedings in accordance with the terms of section 1170.95.

II

Relying on *Gonzalez, supra*, 178 Cal.App.4th 1325, defendant contends the trial court improperly imposed sentence on two great bodily injury enhancements on the same victim in the commission of a single offense. The People properly concede this issue and that the matter must be remanded for resentencing.

*Gonzalez* relied on the Supreme Court's holding in *People v. Rodriguez* (2009) 47 Cal.4th 501*,* interpreting section 1170.1, subdivision (f), to interpret section 1170.1, subdivision (g). *Gonzalez* held the defendant could not be sentenced for both a great bodily injury and gang enhancement against the same victim in a single offense, since the elevated term for the gang enhancement was imposed because he committed a "violent" felony, and the assault charge was only a "violent" felony because of the infliction of great bodily injury, based on the applicable statutory definitions. Instead, the trial court "should have imposed only the greatest of those enhancements as required by section 1170.1, subdivision (g)." (*Gonzalez, supra*, 178 Cal.App.4th at pp. 1331, 1332.)

Here, as in *Gonzalez*, defendant's infliction of great bodily injury had two consequences: He received a three-year term for the great bodily injury enhancement for count one; and it turned count one's assault offense into a violent felony as defined by section 667.5, subdivision (c)(8), which qualified defendant for the 10-year gang

12

enhancement for the commission of a violent felony under section 186.22, subdivision (b)(1)(C). (*Gonzalez, supra*, 178 Cal.App.4th at pp. 1329-1330.)

However, section 1170.1, subdivision (g) prohibits the imposition of more than one enhancement "for the infliction of great bodily injury on the same victim in the commission of a single offense . . . ." As in *Gonzalez*, defendant's infliction of great bodily injury on the victim in count one subjected him to an enhancement under section 12022.7, subdivision (a), and the same infliction of great bodily injury on the same victim also turned defendant's underlying assault offense into a "violent felony" under section 667.5, which subjected him to an enhancement under section 186.22, subdivision (b)(1)(C). "In other words, the trial court imposed *two* enhancements for [defendant's] infliction of great bodily injury on the same victim in the commission of a single offense." (*Gonzalez, supra*, 178 Cal.App.4th at p. 1332.) Accordingly, the matter must be remanded for resentencing on the enhancements for count one, consistent with section 1170.1, subdivision (g) and *Gonzalez*.

## DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1170.95 is reversed. The matter is remanded with directions to issue an order to show cause and hold a hearing under section 1170.95, subdivision (d). In addition, the matter is remanded to the trial court for resentencing as the sentence imposed is unauthorized under *Gonzalez, supra*, 178 Cal.App.4th 1325.


          /s/
          RAYE, P. J.


We concur:


  /s/
HOCH, J.

_____/s/_____
EARL, J.